Michael DiChiara
KRAKOWER DICHIARA LLC
One Depot Square
77 Market Street, Suite 2
Park Ridge, NJ 07656
(201) 746-0303

Michael D. Palmer*
SANFORD HEISLER, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
(646) 402-5650
* Admitted *Pro Hac Vice*

*Attorneys for Named Plaintiffs,
putative FLSA Collective Plaintiffs,
and proposed Classes*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

----------------------------------------------------------x

| | |
|---|---|
| YAW ADU POKU and DANIEL ATTAH-POKU, on behalf of themselves and others similarly situated, | Case No. 13 Civ. 3327 (SRC)(CLW) |
| Plaintiffs/Counterclaim Defendants, | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM** |
| v. | |
| BEAVEX, INC., | |
| Defendant/Counterclaim Plaintiff. | Motion Date: October 7, 2013 |

----------------------------------------------------------x

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

I. INTRODUCTION ......................................................................................1

II. ARGUMENT ..............................................................................................2

 A. DEFENDANT'S COUNTERCLAIM DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF .......................................................3

 1. The Indemnification Provision Does Not Cover Plaintiffs' Claims For Unpaid Wages..........................................5

 2. Pursuant To The FLSA And The Supremacy Clause, Defendant Cannot Seek Indemnification From The Plaintiffs For Their Claims Of Unpaid Wages ...........................9

 3. Were The Indemnification Provision Broad Enough To Cover Plaintiffs' Claims For Unpaid Wages, It Would Be Unconscionable And Against New Jersey Public Policy .........12

 III. CONCLUSION.........................................................................................14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................................3

*Arnold Oil Props. LLC v. Schlumberger Tech. Corp.*,
   672 F.3d 1202 (10th Cir. 2012)..................................................................................7

*Bailon v. Seok AM # 1 Corp*, No. C09-05483,
   2009 U.S. Dist. LEXIS 114744 (W.D. Wash. Dec. 9, 2009) .............................10

*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981)...............................9

*Carda v. E.H. Oftedal & Sons, Inc.*, No. 04-5036,
   2005 U.S. Dist. LEXIS 26364 (D.S.D. Aug. 26, 2005) ......................................11

*Casias v. Distrib. Mgmt. Corp.*, No. 11-874,
   2012 U.S. Dist. LEXIS 142694 (D.N.M. Sept. 28, 2012)................................6, 7

*Dare v. Freefall Adventures,* 349 N.J. Super. 205 (App. Div. 2002)......................13

*Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-cv-02272,
   2011 U.S. Dist. LEXIS 76802 (D. Colo. July 15, 2011) .....................................13

*Delta Funding Corp. v. Harris,* 189 N.J. 28 (2006)..........................................12, 13

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). ..................................3, 6

*Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363 (S.D.N.Y. 2012) ........6

*Herman v. RSR Sec. Servs.*, 172 F.3d 132 (2d Cir. 1999).......................................10

*Kieffer v. Best Buy*, 205 N.J. 213 (2011).....................................................................6

*LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260 (5th Cir. 1986). .....................10

*Local 1035, Int'l Bhd. of Teamsters v. Pepsi Allied Bottlers, Inc.*,
    99 F. Supp. 2d 219 (D. Conn. 2000) ...................................................................11

*Lowe's Cos. v. Varnell, Struck & Assocs.*, No. 5:07cv104,
    2008 U.S. Dist. LEXIS 108144 (W.D.N.C. Mar. 27, 2008) ..............................11

*Lyle v. Food Lion, Inc.*, 954 F.2d 984 (4th Cir. 1992) ..........................................9, 10

*Martin v. Gingerbread House, Inc.*, 977 F.2d 1405 (10th Cir. 1992) ...............10, 11

*McClure v. Bank of Am. Corp.*, No. 05-4011(SRC),
    2006 U.S. Dist. LEXIS 2337 (D.N.J. Jan. 23, 2006) ...........................................12

*Phelps v. 3PD, Inc.*, No. 08-CV-387-HU,
    2008 U.S. Dist. LEXIS 92433 (D. Or. Nov. 12, 2008).......................................6, 8

*Signature Bank v. Check-X-Change, LLC*, No. 12-2802 (ES),
    2013 U.S. Dist. LEXIS 90880 (D.N.J. June 27, 2013) .........................................2

*Shionogi Pharma, Inc. v. Mylan, Inc.*, No. 10-1077,
    2011 U.S. Dist. LEXIS 62068 (D. Del. June 10, 2011) ........................................3

*Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985) .......9

*U.S. v. Seckinger*, 397 U.S. 203 (1970).....................................................................6

*Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011 (N.D. Ill. 2009) .........................10

*Wirtz v. Bledsoe*, 365 F.2d 277 (10th Cir. 1966).......................................................9

**Statutes**

29 U.S.C. § 201 ..........................................................................................................2

N.J.S.A. § 34:11-4.1 ..................................................................................................2

N.J.S.A. § 34:11-56a ..................................................................................................2

iv

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................2, 3

Plaintiffs Yaw Adu Poku and Daniel Attah-Poku respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendant's Counterclaim.[1]

## I.   INTRODUCTION

Plaintiffs are former employees of BeavEx, Inc. ("Defendant" or "BeavEx"), a courier company which provides deliveries and warehousing for banks, laboratories, pharmaceutical companies and other facilities. (Compl. ¶¶ 5, 10-11.) Like all BeavEx couriers, Plaintiffs' job was to perform pick-ups and deliveries for BeavEx's customers. (*Id.* ¶ 33.) During Plaintiffs' combined thirteen years of employment with BeavEx[2], the company tightly controlled the manner in which they performed their jobs and continuously monitored the performance of deliveries. (*Id.* ¶ 43(a)-(l).)

Plaintiffs and the other couriers consistently worked over 40 hours per week, but Defendant never paid them time-and-a-half for their overtime hours. (*Id.* ¶¶ 36-41.) Additionally, Defendant took deductions from couriers' wages for uniforms and other business expenses, further reducing their received wages. (*Id.*

---

[1] In support of this memorandum, Plaintiffs herewith submit the Declaration of Michael DiChiara, dated September 5, 2013, attaching as Exhibit A, a copy of Plaintiffs' Complaint, filed on May 28, 2013 ("Compl."); and attaching as Exhibit B, a copy of Defendant's Answer to Plaintiff's Complaint and Counterclaim, filed on August 1, 2013 ("Answer").

[2] *Id.* ¶¶ 10-11.

1

¶ 42.)  In its defense, BeavEx asserts that couriers "were properly classified as independent contractors . . . ."  (Answer at 8, Third Defense.)

Seeking to rectify Defendant's actions against themselves and numerous others, Plaintiffs bring this class/collective action on behalf of current and former BeavEx couriers to recover unpaid overtime wages, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a, *et seq.*, and for pay deductions in violation of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1, *et seq*.

On August 1, 2013, Defendant filed an answer and asserted a counterclaim alleging that Plaintiffs are contractually obligated to indemnify Defendant for their own claims of unpaid wages.  (*See* Answer at 14-16 ("Counterclaim").)  Having no basis in fact or law, the Counterclaim is a blatant attempt to intimidate Plaintiffs and other BeavEx employees from vindicating their rights under the law and should be dismissed pursuant to Rule 12(b)(6).

## II.   ARGUMENT

"A motion to dismiss a counterclaim is properly evaluated under the familiar Rule 12(b)(6) standard."  *Signature Bank v. Check-X-Change, LLC*, No. 12-2802 (ES), 2013 U.S. Dist. LEXIS 90880, at *4 (D.N.J. June 27, 2013).  "When deciding the motion to dismiss a counterclaim pursuant to Federal Rule of Civil

Procedure 12(b)(6), the court limits its review to the face of the counterclaim." *Shionogi Pharma, Inc. v. Mylan, Inc.*, No. 10-1077, 2011 U.S. Dist. LEXIS 62068, at *6 (D. Del. June 10, 2011). The court must accept all alleged facts as true, but legal conclusions should be disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

> To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation omitted). "In other words, a [counterclaim] must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211. The determination of whether the allegations allege a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense plausibility." *Iqbal*, 556 U.S. at 679.

**A.    DEFENDANT'S COUNTERCLAIM DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF.**

Defendant outrageously claims that Plaintiffs are contractually required to indemnify BeavEx for all damages resulting from this case. The Counterclaim is implausible – to say the least – and should be dismissed.

3

Defendant asserts the following factual allegations:

(i) Plaintiffs entered into written contracts with BeavEx to provide "pick-up, transportation, and delivery of property and items brokered and arranged by BeavEx for customers in need of such services (the 'Contracts')."  (Counterclaim ¶ 2.)

(ii) The "Contracts contain[ ] an indemnification provision that . . . [Plaintiffs] agree to defend, indemnify and hold harmless BeavEx from any claims, losses and expenses that arise from the performance of the [Plaintiffs'] services and obligations under the Contracts."  (Counterclaim ¶ 6.)

(iii) "Under the Contracts, the [Plaintiffs] . . . agree to . . . maintain separate and distinct businesses from BeavEx and to provide services to BeavEx customers as independent contractors, not BeavEx employees."  (Counterclaim ¶ 7.)

(iv) Plaintiffs filed a putative class action complaint against BeavEx, alleging violations of the FLSA, NJWHL, and NJWPL.  (Counterclaim ¶ 5.)

Based upon the above factual allegations, Defendant makes the legal claim that "[i]f there is an ultimate determination in this matter that the [Plaintiffs] are employees, not independent contractors, then the [Plaintiffs] will have breached

4

their obligations under the Contracts, including, but not limited to, their obligation to remain separate and distinct businesses from BeavEx and to remain 'Owner/Operators in fact and in law.'" (Counterclaim ¶ 8.) In other words, Defendant asserts that if Plaintiffs successfully establish that BeavEx misclassified them as independent contractors, Plaintiffs will be in breach of their Contracts. Further, Defendant claims that in the event BeavEx successfully convinces the Court that couriers are independent contractors, Plaintiffs should be held liable under the indemnification clause for Defendant's expenses and attorneys' fees. Accordingly, under Defendant's legal theory, Plaintiffs are effectively contractually barred from bringing any claim against BeavEx for unpaid wages.

Defendant's Counterclaim fails to assert a valid claim for relief. First, Plaintiffs did not agree to indemnify Defendant from actions they brought for unpaid wages. Further, were the Contracts' indemnification clause broad enough to cover this type of action, it would be unenforceable pursuant to the FLSA and Supremacy Clause as well as New Jersey contract law and public policy.

1. **The Indemnification Provision Does Not Cover Plaintiffs' Claims For Unpaid Wages.**

Defendant alleges that Plaintiffs are contractually liable pursuant to the Contracts' indemnification provision which states that Plaintiffs "agree to defend, indemnify and hold harmless BeavEx from any claims, losses and expenses that arise from the performance of the [Plaintiffs'] services and obligations under the

5

Contracts." (Counterclaim ¶ 6.) However, the claims in this lawsuit do not arise out of Plaintiff's obligations under the Agreement.[3] Rather, the lawsuit concerns *Defendant's* obligations to properly compensate Plaintiffs and other couriers under the law. Accordingly, it is clear that the Defendant has not alleged facts that Plaintiffs are liable to BeavEx under the Contracts' indemnification provision. *See Kieffer v. Best Buy*, 205 N.J. 213, 224 (2011) (liability should be found to shift from an "indemnitee" to an "indemnitor" only if there is "express and unequivocal language" to that effect); *U.S. v. Seckinger*, 397 U.S. 203, 211-212 (1970) (ruling that indemnitor would only be held liable for negligence of indemnitee if "the mutual intention of the parties to this effect should appear with clarity from the face of the contract").[4]

Courts considering analogous indemnification provisions have recognized that the clauses did not cover claims brought by plaintiffs for unpaid wages. *See, e.g. Casias v. Distrib. Mgmt. Corp.*, No. 11-874, 2012 U.S. Dist. LEXIS 142694 (D.N.M. Sept. 28, 2012); *Phelps v. 3PD*, No. 08-CV-387-HU, 2008 U.S. Dist. LEXIS 92433 (D. Or. Nov. 12, 2008).

---

[3] While Defendant alleges in its Counterclaim that the lawsuit's claims fall within the terms of the indemnification provision [Counterclaim ¶ 9], this is a legal conclusion which must be disregarded. *See Fowler,* 578 F.3d at 210-211.

[4] *See also Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 378 (S.D.N.Y. 2012) ("indemnification agreements are strictly construed to avoid reading in a duty which the parties did not intend to be assumed").

In *Casias*, the plaintiffs were delivery drivers who had been classified by the defendant as independent contractors. 2012 U.S. Dist. LEXIS 142694, at *2-4. The plaintiffs brought class claims for unpaid overtime. *Id.* at *2. In order to work for defendant, the drivers were required to sign contracts which included indemnification clauses pursuant to which plaintiffs agreed to indemnify defendant from damages resulting from 1) plaintiffs' operation of equipment, 2) plaintiffs' obligations under the contracts, 3) plaintiffs' breach of the contracts, and 4) any acts or omissions by the plaintiffs. *Id.* at 3-4. The defendant countersued, alleging that "the claims asserted by Plaintiffs in the Complaint, and the fees and expenses Defendant has incurred and will incur to defend Plaintiffs' suit, fall within the terms of the indemnification provisions in the Independent Contractor Agreement and Subcontractor Agreement." *Id.* at 5-6.

Dismissing the counterclaim, the court in *Casias* ruled: "[T]he indemnification clauses on their face do not clearly provide that they will shift the responsibility for the allegedly wrongful conduct of Defendant to Plaintiffs. Rather the clauses limit Plaintiffs' indemnification to loss arising out of Plaintiffs' actions."[5]

---

[5] Further, the court noted that unlike an "exculpatory clause", "[a]n 'indemnification clause . . . protects against claims made by parties outside of the contract." *Id.* at *23-24 (quoting, *Arnold Oil Props. LLC v. Schlumberger Tech. Corp.*, 672 F.3d 1202, 1207 (10th Cir. 2012).

7

Similarly, in *Phelps*, the plaintiffs alleged that the defendant illegally misclassified them and other similarly situated employees as independent contractors. 2008 U.S. Dist. LEXIS 92433 at *2. The defendant asserted a counterclaim against the named plaintiff for indemnification based upon an "Independent Contractor Operating Agreement (ICOA)". *Id*. The ICOA stated that the "Contractor" [the named plaintiff] indemnified the defendant from "claims . . . arising from or relating to Contractor's relationship with Contractor's employees" and from "Contractor's acts or omission resulting from or arising out of such Contractor's operation of the Equipment." *Id.* at *4. Dismissing the defendant's counterclaim, the court explained:

> [T]he claims asserted by Plaintiffs are based on Defendant's allegedly improper classification of Plaintiffs as independent contractors rather than employees. Such allegedly improper classification does not "aris[e] from or relat[e] to [Plaintiffs'] relationship with [Plaintiffs'] employees," ICOA § 3(f)(4), or from Plaintiffs' "omissions resulting from or arising out of . . . [the] operation of the equipment." ICOA § 4(e)).

*Id.* at *4-5. (citation omitted).

Plaintiffs' claims for unpaid wages arise out of BeavEx's actions, not Plaintiffs', and thus, do not fall within the indemnification clause. As Defendant has not alleged facts that Plaintiffs are liable to BeavEx under the Contracts' indemnification provision, the Counterclaim should be dismissed.

8

## 2. Pursuant To The FLSA And The Supremacy Clause, Defendant Cannot Seek Indemnification From The Plaintiffs For Their Claims Of Unpaid Wages.

Courts have long recognized that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys.,* 450 U.S. 728, 740 (1981). *See also Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir. 1966) (the purpose of the FLSA cannot be frustrated by contract). *Cf. Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 302 (1985) ("the purposes of the [FLSA] require that it be applied even to those who would decline its protections"). Likewise, the FLSA does not permit an employer to "indemnify itself . . . for its own violation of the FLSA . . . ." *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992). Accordingly, courts have dismissed counterclaims for indemnification brought against plaintiffs in FLSA actions.

In *Lyle*, plaintiff Tew alleged that defendant Food Lion failed to pay him for all hours worked. 954 F.2d at 986. In response, the defendant filed a counterclaim, alleging that by working off-the-clock, plaintiff had breached his employment contract. *Id*. at 987.[6] The Fourth Circuit affirmed the dismissal of the counterclaim, ruling that permitting defendant to indemnify itself "'would run

---

[6] The defendant also filed a separate third-party complaint against Tew for allowing another employee under his employment to work off-the-clock. *Id.*

9

afoul of the Supremacy Clause of the Constitution' and 'would undermine employers' incentives to abide by the [FLSA].'"  *Id.* (quoting, *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986)).

The Tenth and Second Circuits have issued decisions in accord with *Lyle* and *LeCompte. See Martin v. Gingerbread House, Inc.,* 977 F.2d 1405, 1407-1408 (10th Cir. 1992) (ruling that "[i]ndemnity actions against employees work against the purposes of the FLSA" and "hold[ing] that a third party complaint by an employer seeking indemnity from an employee is preempted"); *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 144 (2d Cir. 1999) (ruling that "the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law" claims for indemnification or contribution).

Unsurprisingly, when confronted by counterclaims similar to those alleged against the Plaintiffs here, district courts across the country have dismissed the claims as contradictory to the FLSA and its purposes. *See e.g. Bailon v. Seok AM #1 Corp*, No. C09-05483, 2009 U.S. Dist. LEXIS 114744, at *9 (W.D. Wash. Dec. 9, 2009) (dismissing indemnification counterclaim because "[t]o rule otherwise would frustrate Congress' purpose in enacting the FLSA, since an employer who believed that any violation of the statute's overtime or minimum wage provisions could be recovered from its employees would have a diminished incentive to comply with the statute"); *Villareal v. El Chile, Inc*., 601 F. Supp. 2d 1011, 1015

10

(N.D. Ill. 2009) (dismissing counterclaim and finding that "[d]efendants have not presented, and this court's research has not disclosed, any decision by a federal court to date recognizing a claim for indemnity or contribution by an employer against an employee in the employee's action under the FLSA"); *Carda v. E.H. Oftedal & Sons, Inc.*, No. 04-5036, 2005 U.S. Dist. LEXIS 26364, at *24-25 (D.S.D. Aug. 26, 2005) (granting plaintiffs' motion for summary judgment on counterclaim and ruling that "a state law counterclaim against [the plaintiff] for filing [the underlying] FLSA . . . would raise Supremacy Clause issues and undermine the basic goals of the FLSA"); *Local 1035, Int'l Bhd. of Teamsters v. Pepsi Allied Bottlers, Inc.*, 99 F. Supp. 2d 219, 221 (D. Conn. 2000) (ruling that an indemnification clause in a collective bargaining agreement "violates the public policy embodied in the FLSA and is therefore void"). *Cf. Lowe's Cos. v. Varnell, Struck & Assocs.*, No. 5:07cv104, 2008 U.S. Dist. LEXIS 108144, at *25-26 (W.D.N.C. Mar. 27, 2008) ("It would indeed be unconscionable for an employer to escape liability for unlawful labor practices by having the employee agree to indemnify the employer for FLSA violations.")

Because an indemnity action would thwart the purposes of the FLSA – and run afoul of the Supremacy Clause – Defendant's Counterclaim must be dismissed. *See Martin,* 977 F.2d at 1408 ("Compliance with the FLSA will not be furthered if employees must defend against indemnity actions.").

### 3. Were The Indemnification Provision Broad Enough To Cover Plaintiffs' Claims For Unpaid Wages, It Would Be Unconscionable And Against New Jersey Public Policy.

In seeking indemnification for damages, Defendant demands "reasonable attorneys' fees, incurred by BeavEx in defending against [Plaintiffs'] Complaint." (Counterclaim ¶ 10.) However, New Jersey has long had a "public policy against fee-shifting provisions" in "contracts used by businesses against consumers, individuals, or other weaker parties." *McClure v. Bank of Am. Corp.,* No. 05-4011(SRC), 2006 U.S. Dist. LEXIS 2337, at *11, n.3 (D.N.J. Jan. 23, 2006). Courts "hostility to such provisions is generally out of concern for the unequal bargaining position of the parties and the possibilities of overreaching" [*Id.* (internal quotation omitted)], as well as an apprehension that "fee-shifting provisions can deter a litigant from pursuing a claim." *Delta Funding Corp. v. Harris*, 189 N.J. 28, 42 (2006).

In *Delta Funding*, third-party plaintiff Harris brought a complaint against a mortgage lender, asserting the company violated the Truth in Lending Act (TILA) and New Jersey Consumer Fraud Act (CFA). *Id.* at 37. The mortgage lender moved to compel Harris to arbitration. *Id.* Harris opposed the motion, arguing, in part, that the arbitration agreement was unconscionable as it permitted the arbitrator to allocate the entire arbitration cost to Harris if she did not prevail in

arbitration. *Id.* at 37-40.[7] The New Jersey Supreme Court ruled that the cost-shifting provision was unconscionable under New Jersey contract law as the risk that Harris would have to pay all arbitration costs was a "deterrent to the vindication of her statutory rights." *Id.* at 43.

In *Dare v. Freefall Adventures,* the plaintiff brought a personal injury lawsuit against the defendant for injuries resulting from a skydiving accident. 349 N.J. Super. 205, 209 (App. Div. 2002). Following the lower court's finding that defendant was not negligent, the company sought to recover attorneys' fees from the plaintiff pursuant to an agreement signed by plaintiff prior to his jump. *Id.* at 210. The court ruled that the agreement's fee-shifting provision was "void as against public policy" as "[t]he deterrent effect of enforcing such a fee-shifting agreement" would "discourage the average recreational participant from seeking the refuge of our courts for fear that he may face the retribution of a substantial legal fee if he does so." *Id.* at 223. *Cf. Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-cv-02272, 2011 U.S. Dist. LEXIS 76802, at *32 (D. Colo. July 15, 2011) (a contract provision which guarantees a prevailing defendant the right to recover attorneys' fees in an FLSA case has a "chilling effect . . . on [p]laintiffs' ability and willingness to attempt to press their claims under the FLSA . . .").

---

[7]  Harris would have been "entitled to costs if she prevailed [since] [a]n award of attorney's fees and costs to prevailing plaintiffs is mandatory under both [the CFA and TILA]"; however if she "did not prevail in arbitration . . . , Harris could be forced to bear the entire cost of the arbitration." *Id.* at 41.

13

It is self-evident that a worker would be deterred from bringing claims against his employer if it meant the possibility of being found liable for Defendant's fees and facing financial ruin. Accordingly, should the indemnification provision in BeavEx's Contract be interpreted as covering Plaintiffs' claims for unpaid wages, the provision should be found unconscionable under New Jersey contract law and against New Jersey public policy.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss Defendant's Counterclaim should be granted in its entirety.

Dated: September 5, 2013         Respectfully submitted,

                                 KRAKOWER DICHIARA LLC


                                 By:__/s/ Michael R. DiChiara_____
                                     Michael R. DiChiara
                                     One Depot Square
                                     77 Market Street, Suite 2
                                     Park Ridge, NJ 07656
                                     (201) 746-0303
                                     (866) 417-2333 (fax)

Michael D. Palmer*
SANFORD HEISLER, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
(646) 402-5653 (direct)
(646) 402-5650 (main)
(646) 402-5651 (fax)
*Admitted *Pro Hac Vice*

*Attorneys for Named Plaintiffs, putative FLSA Collective Plaintiffs, and proposed Classes*